

# Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00487-CV

**IN THE INTEREST OF J.M.C.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-PA-01162
Honorable Charles E. Montemayor, Associate Judge Presiding[1]

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  February 15, 2017

AFFIRMED

Appellant P.A.J. appeals the trial court's order terminating his parental rights to his child J.M.C.[2]  P.A.J. asserts the evidence is neither legally nor factually sufficient for the trial court to have found by clear and convincing evidence that terminating his parental rights is in his child's best interest.  Having reviewed the evidence, we conclude it is legally and factually sufficient to support the findings, and we affirm the trial court's order.

### BACKGROUND

The Department of Family and Protective Services received a report in May 2015 alleging that one of J.M.C.'s four siblings was being physically abused by his paternal grandmother—with

---

[1] The Honorable Laura Salinas is the presiding judge of the 166th Judicial District Court.  The order terminating the Appellant's parental rights was signed by the Honorable Charles E. Montemayor, Associate Judge.
[2] To protect the minor's identity, we refer to the father and the child using aliases.  *See* TEX. R. APP. P. 9.8.

whom all five children were living. The Department investigated; it found the children, including eleven-year-old J.M.C., living in conditions of abject squalor. The Department removed the five children, began family service plans, and eventually petitioned to terminate the parental rights of the mother and the three fathers.

At a bench trial on June 17, 2016, and July 13, 2016, P.A.J. appeared by videoconference because he was incarcerated. After the attorneys examined the witnesses, the trial court found, with respect to P.A.J., that P.A.J. met four statutory grounds for termination and that termination of his parental rights was in J.M.C.'s best interest. The trial court terminated P.A.J.'s parental rights, and he appeals. He does not challenge the trial court's findings on the statutory grounds. Instead, he asserts the evidence is neither legally nor factually sufficient to support the trial court's finding that terminating his parental rights was in J.M.C.'s best interest.

### EVIDENCE REQUIRED TO TERMINATE PARENTAL RIGHTS

If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2015); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b).

**STANDARDS OF REVIEW**

### A.    Legal Sufficiency

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266).   If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

### B.    Factual Sufficiency

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).   We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord H.R.M.*, 209 S.W.3d at 108.

**BASES FOR TERMINATION**

### A.    P.A.J.'s Course of Parental Conduct

The trial court found by clear and convincing evidence that P.A.J.'s conduct was grounds for termination under subparagraphs (D), (E), (N), and (O) of section 161.001(b)(1).   *See* TEX. FAM. CODE ANN. § 161.001(b)(1).[3]   On appeal, P.A.J. does not challenge the trial court's statutory grounds findings.

---

[3] The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found J.M.L.'s conduct met the following criteria or grounds:

**B.  Best Interest of the Child**

Instead, P.A.J. challenges the sufficiency of the evidence that terminating his parental rights is in J.M.C.'s best interest.  *See id.* § 161.001(b)(2).  We briefly review the law pertaining to determining the best interest of the child.  The factors a court uses to ascertain the best interest of the child may include the following:

> (A)  the desires of the child;
> (B)  the emotional and physical needs of the child now and in the future;
> (C)  the emotional and physical danger to the child now and in the future;
> (D)  the parental abilities of the individuals seeking custody;
> . . .
> (G)  the stability of the home or proposed placement;
> (H)  the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
> (I)   any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors); *see also* TEX. FAM. CODE ANN. § 263.307(b) (listing statutory factors for "determining whether the child's parents are willing and able to provide the child with a safe environment").

---

(D)  knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E)  engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . .

(N)  constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
(i) the department has made reasonable efforts to return the child to the parent;
(ii) the parent has not regularly visited or maintained significant contact with the child; and
(iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]

(O)  failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1)(D), (E), (N), and (O).

Applying each standard of review, we examine the evidence pertaining to the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *E.N.C.*, 384 S.W.3d at 807; *J.F.C.*, 96 S.W.3d at 284.

## EVIDENCE OF BEST INTEREST OF THE CHILD

The two-day bench trial on the Department's petition concerned five children, their mother, a presumed father, and two alleged fathers. The trial court heard testimony from a number of witnesses regarding the mother, the children, and each of the fathers. Because P.A.J. is the only appellant and J.M.C. is his only child that is the subject of this suit, we relate only the witnesses' testimony that pertains to J.M.C. or P.A.J.

### A.    Texas Ranger's Testimony

Texas Ranger Keith John Pauska investigated allegations that J.M.C. was the victim of continuous sexual abuse. Pauska interviewed J.M.C.'s mother, A.C., and she admitted that J.M.C. had been sexually abused. A.C.'s boyfriend made A.C. give J.M.C. an over-the-counter sleep aid. After J.M.C. fell asleep, A.C.'s boyfriend digitally penetrated J.M.C. while he was having sexual intercourse with A.C. Pauska learned of other instances where A.C.'s boyfriend sexually abused J.M.C. Pauska opined that, as a child victim of sexual abuse, J.M.C. had suffered "quite a bit of damage."

### B.    Licensed Professional Counselor's Testimony

Carlos Castillo-Nuñez, a licensed professional counselor, testified that he began counseling services for A.C. in July 2015. He discussed with A.C. the allegations of drug abuse, domestic violence, and J.M.C.'s sexual abuse. A.C. said she was afraid of her boyfriend. A.C. also said her boyfriend made her touch J.M.C. while he and A.C. were being intimate. A.C. told Castillo-Nuñez of other times her boyfriend sexually abused J.M.C.

**C.** **P.A.J.'s Testimony**

P.A.J., J.M.C.'s father, was represented by court-appointed counsel, and P.A.J. testified by videoconference to the following facts. He was unable to appear in person because he was currently incarcerated for indecency with a child—his stepdaughter. He was accused of having his stepdaughter sit on his lap and then forcing her to rub against his crotch. P.A.J. pled no contest to the charge, but he insisted he did not commit the offense. "[M]y ex-wife wanted to leave me and the only way she knew she could leave me was by having me incarcerated." At the time of trial, P.A.J. was in the prison's Administrative Segregation Unit because P.A.J. had been attacked by an offender. P.A.J. testified that "when the offender attacked me, I cut him with a razor."

P.A.J. was also incarcerated from 2005–2009 for spanking nine-month-old J.M.C. and her twenty-two-month-old sibling when the children had scattered diaper wipes around the house. P.A.J. claimed he spanked the two children with his hand, but acknowledged he told officers that he struck the children with a belt. "I believe I was doing something good. I didn't believe that I was beating them or hurting them improperly." P.A.J. took a parenting class when he was incarcerated; the class taught him it is better to discipline a child by talking to the child or removing some of the child's privileges than by spanking the child.

To support J.M.C., P.A.J. plans to seek employment in landscaping, but if that doesn't work out, he will apply for SSI because he has mental disabilities of bipolar disorder and schizophrenia.

P.A.J. admits that because he has been incarcerated, he has not been involved in J.M.C.'s life since "she was a baby." The last time he saw J.M.C. was in a grocery store parking lot in 2010, "but I didn't get to talk to her." He is scheduled to be released from prison on November 3, 2016, and after he is released, he wants J.M.C. to live with him at his friend's house. He

understands J.M.C. has suffered great harm from being sexually abused, and he wants to participate in her therapy. "I'd like to be in my daughter's life as much as possible."

### D. Caseworker's Testimony

Kristen Torres, the Department's caseworker, testified that she has communicated with P.A.J. by mail a few times. Because he is incarcerated, he has not been able to complete the items on his service plan, but P.A.J. did his best to make and keep contact with J.M.C. He wrote her letters: some were appropriate, others were not. When P.A.J. wrote to J.M.C. to talk about sex, "like her not having sex with boys, what can happen, things like that," J.M.C. felt very uncomfortable. "[J.M.C.] did not want to hear that from him. Given the fact that she is a sexual abuse victim, [P.A.J.] should have taken that into consideration before discussing sex with a child he barely knows."

J.M.C. is recovering from repeated sexual abuse. She has a lot of issues and is going to need a lot of therapy, and P.A.J. has no relationship with her. "[P.A.J.] has not been in [J.M.C.]'s life. He has no bond with her. He doesn't know her. She doesn't know him. [J.M.C.] is a sexual abuse[] victim. [P.A.J.] is a sexual abuse perpetrator. I'm concerned with his parenting abilities."

J.M.C. does not wish to be adopted, and she does not want anything to do with P.A.J. She wants to stay in the Department's care until she graduates from high school. She plans to continue on to college, and she wants to take advantage of the benefits the Department can offer her.

It is in J.M.C.'s best interest that P.A.J.'s parental rights be terminated. He cannot provide a safe and stable environment for her. As a sexual abuse perpetrator, P.A.J. cannot understand the trauma J.M.C. has endured as a sexual abuse victim and he cannot properly care for her.

### E. Attorney Ad Litem's Recommendations

Attorney Wallace Tarver, J.M.C.'s attorney ad litem, recommended that P.A.J.'s parental rights to J.M.C. be terminated. Tarver opined that P.A.J. "will have his plate full trying to get his

life together [after being released from years in prison] and really trying to get himself re-established in society."

## P.A.J.'S PARENTAL RIGHTS

The trial court heard testimony pertaining to J.M.C.'s best interest, and the trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony." *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *H.R.M.*, 209 S.W.3d at 108. The trial court heard that J.M.C. was repeatedly sexually abused by her mother's boyfriend, and P.A.J. admitted he pled no contest to forcing his stepdaughter to sit on his lap and rub against his crotch. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H), (I)). P.A.J. admitted he sexually abused his stepdaughter—a young female child in his care, and the caseworker opined that placing J.M.C.—a young female child who was sexually abused by her mother's boyfriend—into P.A.J.'s care would jeopardize J.M.C.'s physical and emotional needs and safety. *See id.* (factors (B), (C), (D), (H), (I)).

P.A.J.'s past spanking of his very young children with a belt for playing with diaper wipes, his present testimony that he "didn't believe that I was beating them or hurting them improperly," and his recent slashing of another inmate with a razor, indicated P.A.J.'s future conduct could endanger J.M.C. *See id.* (factors (B), (C), (D), (H), (I)); *see also* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (7), (12); *D.M.*, 452 S.W.3d at 471 ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent.").

The attorney ad litem opined that P.A.J. "will have his plate full" as he attempts to reintegrate into society, and P.A.J. admitted that he suffers from bipolar disorder and schizophrenia. Upon P.A.J.'s release, he will have to simultaneously find a job, obtain appropriate housing, acquire reliable transportation, and seek healthcare for his medical conditions. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D)).

The caseworker testified that J.M.C. did not want anything to do with P.A.J., and that J.M.C. wanted to continue in the Department's care rather than be forced to live with P.A.J.—a man whom she barely knew, who barely knew her, who had sexually abused a young female child in his care, and who had beaten J.M.C. with a belt when she was nine months old. *See Holley*, 544 S.W.2d at 372 (factors (A), (B), (D), (G), (H), (I)). The caseworker also testified that, as a sexual abuse offender, P.A.J. could not understand the trauma J.M.C. has endured as a sexual abuse victim, and the trial court could have concluded that J.M.C.'s present and future physical and emotional needs and safety would be best protected in the Department's care. *See id.* (factors (B), (C), (D), (G), (H)).

Reviewing the evidence under the two standards, we conclude the trial court could have formed a firm belief or conviction that terminating P.A.J.'s parental rights to J.M.C. was in J.M.C.'s best interest. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 27; *see also* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (12). Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's order. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 27.

## CONCLUSION

On appeal, P.A.J. does not challenge the trial court's findings that his course of conduct comprised multiple bases to terminate his parental rights. Instead, he argues the evidence is neither legally nor factually sufficient to support the trial court's finding by clear and convincing evidence that terminating his parental rights is in J.M.C.'s best interest.

Having examined the evidence under the applicable standards of review, we conclude the evidence pertaining to the trial court's findings is both legally and factually sufficient for the trial court to have found by clear and convincing evidence that terminating P.A.J.'s parental rights to J.M.C. was in J.M.C.'s best interest. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice